IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 19, 2018

**STATE OF TENNESSEE v. H.C. BROWN, JR.**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-D-2869    Mark J. Fishburn, Judge**

_____

**No. M2017-02155-CCA-R3-CD**

_____

A Davidson County grand jury indicted the defendant, H.C. Brown, Jr., with attempted first degree murder, aggravated assault by strangulation, false imprisonment, and violation of an order of protection.  Following trial, a jury found the defendant guilty of aggravated assault by strangulation and violation of an order of protection, and the trial court imposed an effective sentence of fifteen years, eleven months, and twenty-nine days.  On appeal, the defendant challenges the sufficiency of the evidence to support his aggravated assault conviction.  After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and TIMOTHY L. EASTER, J., joined.

Mark Kovach, Nashville, Tennessee, for the appellant, H.C. Brown, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Sarah K. Campbell, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Lody Limbird, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On the evening of October 6, 2015, Cynthia Jones ("the victim") prepared dinner for the defendant, her boyfriend of two years.  At approximately 2:00 a.m. the next morning, the defendant awoke complaining of stomach pains.  The victim took him to the

emergency room, where the defendant was diagnosed with a virus and discharged. However, the defendant was convinced the hospital did not perform the correct tests.

After returning to the extended stay hotel where they resided, the defendant wanted to have sexual intercourse. Although the victim was tired, she agreed because she "didn't want to fight him." The defendant, however, was not able to perform sexually, blaming his inability on the victim's cheating, which the victim denied. The defendant had accused the victim of cheating at least twice before, each time ending in a violent attack on the victim. Following an attack in January 2015, the victim filed an order of protection against the defendant.

The defendant then began accusing the victim of poisoning him, which she also denied. Unable to sleep, the victim went to the bathroom to wash her face. When she returned, the defendant "slammed the lights off" and punched the victim on the right side of her face. The victim fell to the floor and realized "he's gonna beat me again." The defendant got on top of the victim and began choking her by applying pressure on her throat with his thumbs, leaving the victim unable to breathe. The victim tried to pull the defendant's hands off of her throat. However, the defendant would not let go saying, "I know you cheating, b****. I know you're cheating. You think you're gonna do me that way? I'm gonna kill you." The victim was able to turn onto her stomach, but the defendant grabbed her in a headlock. Her body began to shake, and she thought she was going to die. The victim passed out at some point during the assault. When she awoke, her eyes "flew open," and she tried to roll onto her back. The defendant still had her in a headlock, but he was no longer squeezing. However, when the victim began to turn over, the defendant started to choke her again by pushing on her neck with his thumbs.

Eventually, the victim was able to get her foot loose and kick the defendant in the ribs. As she sat up, her back tooth fell out of her bloodied mouth. Although the victim knew she needed to escape, she could not reach for her phone because the defendant would break it if she attempted to call for help. She told the defendant her head hurt "really, really bad." He asked if she wanted to go to the hospital, but the victim knew this was a test to see if she would turn him in and said no. The defendant then told her "the plan was to kill [her]." When the victim said she needed to go to work, the defendant grabbed her pants and said she "wasn't going to go nowhere." Knowing that she would need to calm the defendant down before he would let her leave, the victim smoked marijuana with him to help him relax. At some point after the assault, the housekeeper came in the room to change the sheets and towels. The victim did not scream or ask for help, however, because the defendant would have "snapped [her] neck before anybody got in that room." Finally, the defendant said the victim could go to work if she drove him to get cigarettes. She dropped the defendant off at a convenience

store and drove straight to work because she "knew [she] would be safe" there and "could get the help [she] needed."

After seeing her injuries, the victim's HR representative advised her to seek medical attention. The victim was examined in the emergency room at Southern Hills Hospital and discharged later that day, diagnosed with anterior abrasions, bruising to the throat, a facial contusion, and subconjunctival hemorrhage to both eyes.

Officer Stanley Collins of the Metro Nashville Police Department visited the victim in the emergency room. He described the victim's demeanor as "fearful" and noticed injuries on her neck and shoulder. The victim told Officer Collins that her boyfriend accused her of cheating on him, "strangled [her] to unconsciousness" twice, and said he wanted to kill her. Officer Collins took photographs of the victim's injuries and notified a detective with the domestic violence division of the incident.

Detective Sharraff Mallery of the Metro Nashville Police Department's domestic violence division also responded to Southern Hills Hospital to speak with the victim. Detective Mallery described the victim's appearance as "scared, just almost like as if she was in shock." He photographed the victim's injuries, including redness around the victim's right eye and abrasions, bruising, and redness around her neck. The victim told Detective Mallery that her boyfriend believed she was cheating on him and began to strangle her. She stated the defendant would not let her leave at first, but finally allowed her to go to work. Detective Mallery also contacted Dallas County, Texas and verified the order of protection that was in place against the defendant.

Although the victim was discharged from the emergency room that day without being admitted, she returned to the hospital the following day because her "head felt like it was going to explode and [her] eyes were red." In addition, on October 9, 2015, she went to the domestic violence division of the Metro Nashville Police Department and met with Detective Amanda Martin. The victim's injuries were more visible at this time, and Detective Martin took additional pictures of the victim's face, neck, and shoulders. The pictures of the victim's face showed the severe petechia in her eyes, which Detective Martin stated was a typical injury of strangulation.

Officer Thomas Barnes of the Metro Nashville Police Department responded to a call from the victim asking for assistance in retrieving her belongings from her apartment. At the apartment, Officer Barnes encountered the defendant and advised him that he had an outstanding arrest warrant stemming from his assault of the victim. Because the defendant was complaining of pain in his side, Officer Barnes took him to General Hospital to get medically cleared before booking.

While in jail, the defendant sent a letter to his ex-sister-in-law, Jennie Kay. In the letter, the defendant thanked Ms. Kay for her help and apologized for placing her in this situation. The letter stated that the defendant didn't mean to hurt the victim and still loved her. However, the defendant wrote he sometimes gets so mad he cannot control himself. He said he had seen a doctor and had anxiety attacks and bipolar disorder.

The State called the victim, Officer Collins, Detective Mallery, Detective Martin, Officer Barnes, and Ms. Kay as witnesses at trial, and all rendered testimony consistent with the foregoing. On cross-examination, the victim admitted there were discrepancies between her testimony at trial and at the preliminary hearing. The preliminary hearing occurred just seven days after the attack and she was "traumatized" and "still in shock." However, the victim stated she was now "clear-minded" and could remember the events better than when they first occurred.

The defendant testified on his own behalf, admitting he called the victim a "b****" and accused her of cheating on him. According to the defendant, this caused the victim to kick him as he lay on the bed. To protect himself, the defendant placed the victim in a "full-Nelson hold." The defendant described this hold as "go[ing] up under her arms, under her shoulder and you hold on the neck and you lock in." The move did not require the defendant to place his hands on the front of the victim's throat. He also maintained that any abrasions on the victim were from the long sleeved t-shirt he was wearing at the time. While performing the hold, the defendant and the victim fell to the floor on the side of the bed, and the defendant testified he let the victim go after she complained he was hurting her. After the altercation, they sat on the bed and discussed the future of their relationship. According to the defendant, the victim wanted to stay together, but he told her "it's time to let go." The defendant also admitted he was aware of the order of protection that prohibited contact between himself and the victim.

After hearing closing arguments, being charged, and deliberating, the jury found the defendant not guilty of attempted first degree murder and false imprisonment and guilty of aggravated assault by strangulation and violation of an order of protection. The trial court subsequently sentenced the defendant to fifteen years for aggravated assault by strangulation and to eleven months and twenty-nine days for violation of an order of protection, to run consecutively. The defendant filed a motion for a new trial in which he argued the evidence was insufficient to support his aggravated assault conviction. The trial court denied the motion, and this timely appeal followed.

*Analysis*

The defendant's sole issue on appeal is the sufficiency of the evidence to support his aggravated assault by strangulation conviction. He argues the photographs of the

victim and her actions after the assault are insufficient to support the defendant's conviction. The State contends the evidence is sufficient. We agree.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury convicted the defendant of aggravated assault by strangulation, a Class C felony. As charged in this case, aggravated assault occurs when a person intentionally or knowingly commits an assault, and the assault involved strangulation or attempted strangulation. Tenn. Code Ann. § 39-13-102(a)(1)(A)(iv). Assault occurs when a person "[i]ntentionally, knowingly, or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1). Strangulation occurs by "intentionally or knowingly impeding normal breathing or circulation of the blood by applying pressure to the throat or neck or by blocking the nose and mouth of another person." Tenn. Code Ann. § 39-13-102(a)(2).

The defendant argues the victim's testimony at trial and the photographs of the victim's injuries do not establish that strangulation occurred. Viewed in the light most favorable to the State, the victim testified the defendant choked her by placing his thumbs on the front of her throat. He applied pressure, and the victim was not able to breathe. When the victim was finally able to turn over, the defendant grabbed her in a headlock, causing her to lose consciousness. After she regained consciousness, the defendant continued to choke the victim by pushing on her neck until she was able to kick him in the ribs. Photographic evidence showed redness in the victim's eyes and redness, bruising, and abrasions on her neck and shoulders. Officer Collins, Detective Mallery, and Detective Martin observed injuries on the victim's neck and shoulders consistent with her account of being strangled. Detective Martin observed severe petechia in the victim's eyes, a typical injury of strangulation. Regarding the defendant's claim that the victim's actions after the assault are not sufficient to support his conviction, the victim provided reasonable explanations for her actions. She did not call for help on her phone or ask the housekeeper for assistance because she knew the defendant "would have snapped [her] neck before anybody got in that room." She drove to work instead of the hospital or police station because she "knew [she] would be safe" there. Based on the evidence, a rational jury could find aggravated assault by strangulation beyond a reasonable doubt. The defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE

- 6 -